UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
JOSEPH BRODIE,                                             :
                                      Petitioner,          :
                  -against-                                :          22 Civ. 3821 (LGS)
                                                           :
WARDEN WILLIAMS S. PLILER,                                 :          **OPINION AND ORDER**
                                      Respondent.          :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Petitioner Joseph Brodie seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging

the calculation of time to be credited to his sentence pursuant to the First Step Act of 2018, P.L. No.

115-391, 132 Stat. 5194 (2018).  For the reasons stated below, the petition is granted.

## I.    BACKGROUND

### A.  Statutory and Regulatory Scheme

The First Step Act ("FSA") was enacted on December 21, 2018.  The FSA provides certain

incarcerated persons the opportunity to earn time credits ("FSA Time Credits") for participation in

evidence-based recidivism reduction programming ("EBRR") or productive activities ("PA").  18

U.S.C. § 3632(d)(4)(A).  "[F]or every 30 days of successful participation," a person "shall earn 10

days of time credits."  § 3632(d)(4)(A)(i).  If he or she has been "determined by the Bureau of

Prisons to be at a minimum or low risk of recidivating" for a certain period, that person shall earn

"an additional 5 days," for a total of 15 every 30 days.  § 3632(d)(4)(A)(ii).  The FSA provides that

no such credits can be earned before the date the FSA was enacted or during a period of detention

prior to the incarcerated person's sentence commencing.  § 3632(d)(4)(B).  The FSA also provides

that those convicted of certain crimes or with deportation orders are ineligible for credits.

§ 3632(d)(4)(D), (E).  The statute authorizes the Bureau of Prisons ("BOP") to develop guidelines

for reductions of time credits for certain rule violations.  § 3632(e).

The FSA required the Attorney General, within 210 days of the FSA's enactment, to develop a "risk and needs assessment system" to assess each incarcerated person's recidivism risk and assign appropriate EBRR programming. § 3632(a). On July 19, 2019, the Attorney General announced that the required "risk and needs assessment," called PATTERN, had been developed on schedule. The FSA then required the Director of the BOP, within 180 days of the release of PATTERN, to complete an initial assessment of each incarcerated person and begin to implement EBRR and PA. § 3621(h)(1). On January 15, 2020, the BOP announced that it had completed initial assessments of all incarcerated persons under the PATTERN system, again on schedule. The FSA provided a phase-in period in which to implement EBRR and PA of two years from the date the BOP completed the initial assessments. § 3621(h)(2). The phase-in period ended on January 15, 2022. The FSA provides that, beginning when it was enacted and through the phase-in period, the BOP "may begin to expand" existing EBRR and PA and "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards," allowed by the FSA, including FSA Time Credits. § 3621(h)(4).

When an incarcerated person earns FSA Time Credits, those credits "shall be applied toward time in prerelease custody or supervised release," and the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." § 3632(d)(4)(C). Prelease custody is defined as placement in either home confinement or a residential reentry center. § 3624(g)(2). Section 3624(g) defines "eligible prisoner[s]" as persons who have earned FSA Time Credits equal to the remainder of their terms of imprisonment, who have either reduced their recidivism risk levels or maintained a low or minimum risk level throughout their terms of imprisonment, and who meet an additional requirement depending on whether they are transferred to prerelease custody or supervised release. § 3624(g)(1). For a transfer to prerelease custody, a person must have had a minimum or low risk level for the last two reassessments or had a transfer

petition approved by the warden of the prison.  § 3624(g)(1)(D)(i)  For transfers to supervised release, a person must have had a minimum or low risk level at his or her last reassessment, and the statute provides that BOP "may transfer" such a person who has a term of supervised release as part of his or her sentence "to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632."  § 3624(g)(1)(D)(ii), (3).

On January 19, 2022, the BOP's final rule (the "Rule") implementing the FSA's provisions regarding time credits was published in the Federal Register at 87 Fed. Reg. 2,705 (Jan. 19, 2022), which later was codified at 28 C.F.R. §§ 523.40 to 523.44.  The Rule matches the statute's eligibility requirements, formula for calculating time credits, requirements for applying time credits toward prerelease custody or supervised release and its exclusion of the periods before the FSA was enacted and before the person began serving his or her sentence.  §§ 523.41(d), 523.42(a), (b)(1), (c), 523.44.  The Rule also provides that eligible persons: (i) "may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020" and (ii) "may earn FSA Time Credit if he or she is successfully participating in" the appropriate EBRR and PAs recommended based on PATTERN "on or after January 15, 2020."  § 523.42(b)(2), (3).  That is, the BOP elected to offer time credits throughout the phase-in period.

### B.  Petitioner's Time Credits

The following facts are from Respondent's response to the Petition and taken as true, except where otherwise noted.  28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer . . . if not traversed, shall be accepted as true except to the extent that the judge finds from evidence that they are not true.").  On February 24, 2020, Petitioner began serving an 87-month sentence in federal custody.  *See* Judgment at 1-2, *United States v. Brodie*, No. 18 Cr. 162 (D.N.J.), ECF No. 178.  Petitioner's full-term release date is December 18, 2024.  Petitioner's projected statutory release date, after accounting for Good Conduct Time earned and projected to be

earned, is December 20, 2023.  Petitioner was transferred to home confinement on July 11, 2022.

Petitioner's sentence includes a three-year term of supervised release.

On January 12, 2022, BOP established "interim procedures" to implement the FSA and the

Rule.  The interim procedures involve manually calculating FSA Time Credits while the BOP

works to finish an automated program that will calculate credits in the future.  The interim

procedures operate by extracting data for batches of incarcerated persons.  Individuals are

prioritized for certain batches based on how soon their projected release dates are.  The BOP then

takes the total number of days between (1) the later of the date the FSA was enacted or the date the

person began serving his or her sentence, and (2) the date the batch data was extracted.  That

number is divided by 30 and rounded down to determine the number of monthly periods.  The

number of monthly periods is finally multiplied by either 15 (in the case of persons with minimum

or low risk levels) or 10 (for medium or high risk levels).

Petitioner's FSA Time Credits were calculated as follows:  Because he was already within

two years of his projected release date of December 20, 2023, Petitioner was part of an early batch

of data pulled for application of the interim procedures, on January 29, 2022.  Individuals who were

closer in time to their release dates were prioritized so that they could realize the full benefit of any

FSA time credits against their sentences.  Petitioner began serving his sentence on February 24,

2020.  The number of days between those dates, 705, was divided by 30 and rounded down to the

nearest whole number of monthly periods, 23.  Petitioner had either a minimum or low assessed risk

level, so that number was then multiplied by 15 to arrive at 345 days of FSA Time Credits.

In his reply in support of the Petition, Petitioner asserts that he continued successfully to

participate "in Needs-Based FSA programming and productive activities" from the time he began

serving his sentence on February 24, 2020, until at least May 31, 2022, and potentially through the

day he filed his reply, September 25, 2022.  The BOP has not calculated or applied any FSA Time

Credits for Petitioner since January 29, 2022, the date Petitioner was part of an early batch of data pulled for application of the interim procedures.

## II.   LEGAL STANDARD

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3); *accord Dhinsa v. Krueger*, 917 F.3d 70, 79 (2d Cir. 2019). A petitioner may use § 2241 to challenges the execution of his or her sentence, including the "computation of a . . . sentence by prison officials." *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); *accord Evans v. Larkin*, 629 F. App'x 114, 115 (2d Cir. 2015) (summary order). Petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (internal quotation marks omitted). A petitioner must exhaust administrative remedies as a prerequisite to habeas corpus relief under § 2241. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *see Reynolds v. Petrucci*, No. 20 Civ. 3523, 2020 WL 4431997, at *2 (S.D.N.Y. July 29, 2020). In this case, Petitioner alleges, and Respondent does not dispute, that Petitioner exhausted administrative remedies.

Courts must liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions "to raise the strongest claims [they] suggest[]." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted).

### III.   DISCUSSION

Respondent has offered no legal basis for its decision to refuse to calculate FSA Time Credits for Petitioner's qualifying participation in programming after January 29, 2022. Respondent does not dispute that Petitioner has continued to participate in EBRR and PA since January 29, 2022, that might qualify him for FSA Time Credits.  Rather, Respondent argues that the "BOP made the reasonable determination that it is not necessary to continue to manually calculate and post additional FSA Time Credits for inmates, like Brodie, who have already had their FSA Time Credits calculated manually because these inmates are getting a windfall in the form of additional FSA Time Credits under the interim procedures."  Respondent asserts that once its final implementing procedures are in place, the accrual and application of FSA Time Credits under the Rule will be cut off once "the accumulation of earned FSA Time Credits results in a projected release date that is within 18 months of the date of posting of the credits."  Respondent then reasons that, because under the "interim procedures" FSA Time Credits are calculated without regard to that 18-month cutoff, Petitioner and others similarly situated are receiving a windfall.

Respondent does not cite, and the Court has not located, any part of the Rule that imposes or authorizes this 18-month cutoff, nor any statutory authority under which such a rule could be promulgated.  Respondent argues that the 18-month cutoff is "eminently reasonable" so that an incarcerated person's release date is not "a moving target" as the BOP tries to prepare for it.  That may be so, but the FSA does not grant the BOP discretion to stop awarding FSA Time Credits at a certain point.  The FSA provides that an incarcerated person "shall earn" either ten or fifteen days (depending on risk level) per thirty days of successful participation in programming, that those time credits "shall be applied toward time in prerelease custody or supervised release" and that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or

6

supervised release." 18 U.S.C. § 3632(d)(4)(A), (C).  Therefore, Respondent must continue to calculate Petitioner's FSA Time Credits based on his activities after January 29, 2022.

That said, Respondent is correct that the BOP retains discretion over whether to apply FSA Time Credits to "prerelease custody *or* supervised release."  The BOP "may," but is not required to "transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). To the extent Respondent's 18-month cutoff describes only when the BOP will exercise its discretion to transfer incarcerated persons to prerelease custody rather than to supervised release early, neither the statute nor the Rule bars that policy choice.

For those reasons, the Court expects that, on December 20, 2022 (one year before his statutory release date), Petitioner will be eligible for transfer to supervised release, which cannot happen more than one year prior to his statutory release date under § 3624(a) and (b).  However, Respondent will retain discretion to transfer him to supervised release or maintain Petitioner's current placement in home confinement, and it is reasonable to exercise that discretion with a view toward ensuring predictable and orderly release dates.

## IV.    CONCLUSION

For the foregoing reasons, the Petition is GRANTED in part and DENIED in part.  By **November 21, 2022**, Respondent shall calculate manually any additional FSA Time Credits to which Petitioner is entitled pursuant to the FSA and the Rule, without regard to Respondent's "interim procedures" or any cutoff based on Petitioner's projected release date, and Respondent shall file a status letter providing the updated calculation and any other changes in Petitioner's expected transfer from home confinement to another form of custody or to supervised release.

Respondent's second request for an extension of time to respond to the Petition is

GRANTED, and Respondent's Declaration and the accompanying exhibits are deemed timely filed.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 16.

Dated: November 7, 2022
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE